[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Bonnie L. Hawes, whose maiden name was Clark, and the defendant, Kenneth A. Hawes, intermarried on April 13, 1963, in Washington, D.C.
There is one minor child, born to the plaintiff, issue of this marriage: Heather Lee Hawes, date of birth October 2, 1975. An adult son, Kenneth Alden Hawes, lawful issue of this marriage was born November 21, 1966.
No other children have been born to the plaintiff wife and none have been adopted.
For At least twelve (12) months next preceding the date of the filing of this complaint, one of the parties to this marriage has been a resident of Connecticut.
Neither plaintiff nor defendant is, or has been, a recipient of financial aid from the state of Connecticut, any sister state, or the federal government.
Between April 13, 1963 and the date of this complaint, the marriage has broken down, and the court so finds, and takes jurisdiction.
The trial began on December 13, 1990 and after hearings on divers days, concluded on February 26, 1991. The parties filed requested orders, and claims for relief and proposed orders, respectively on February 28, 1991.
By agreement, a motion of the plaintiff to hold the defendant in contempt was heard and denied. The defendant's request for costs in the sum of $25.00 to reimburse him for a transcript needed to defend against the contempt motion, and $250.00 in counsel fees to appear and defend against the contempt motion is granted. The total of $275.00 is awarded to the defendant, and ordered to be paid to him by the plaintiff, at the end of this trial.
The parties first met while students at Middlebury College in 1960. They were married in 1963, while defendant was a soldier in the United States Army. He served in the United States and abroad. The plaintiff traveled with him and contributed to their support by working wherever the defendant CT Page 4280 was stationed. The defendant was discharged in 1964 and enrolled in Columbia University Graduate School to seek a master's degree that he received in June 1966. During this period, plaintiff worked to support them as the defendant had no income, job, stipend, or grants in aid, and was also delivered of their first child on November 21, 1966.
They then started defendant's career in the corporate world of middle, and upper management jobs that would embrace at least ten career enhancement moves in defendant's efforts to advance economically, and span some twenty-five years to date.
In 1969, the defendant had a sexual liaison with another woman and told the plaintiff who was shocked and hurt. They reconciled and then he had an affair with another woman and again she forgave him and their marriage went on. Heather was born in 1975 and no apparent marital problems surfaced up and through 1982.
In and about 1980, the plaintiff's pain began and she began examinations and treatments by and with many doctors, internists, gynecologists, orthopedists, neurologists, etc.
Meanwhile, defendant was busy on his job and active in boating.
Plaintiff in pain, depressed, and in need of affection, felt defendant was not helping her as he was distant, bored and not attendant to her.
She began to have an affair with her therapist who lived at their house. She told the defendant and solicited his help in ending her affair, but he told her to take care of it, and continued his friendship with this man.
In the course of the next few years they both had outside sexual liaisons, that the other did not learn of at the time, all of the time.
In view of the extensive sexual activity of both parties, and their reconciliations and/or forgiveness of same, and their continuing marital status, The Court is forced to conclude that their joint and several infidelities were not a cause of the breakup of this marriage, and the court so finds.
The plaintiff's medical problems have been diagnosed as diseased discs in her lumbar and cervical spinal areas, that have been fused, as well as a protruding disc in her upper back. Medical testimony as per AMA Guidelines, gives her a permanent partial impairment of functions of 42%. Her neck is CT Page 4281 specifically 20% impaired and her back is 60% specifically impaired. These findings were given to the court in testimony from Dr. Taub, a pain specialist who further stated the plaintiff's pain is physiologically based. Dr. Taub also stated that the plaintiff's at times severe pain, would inhibit, but not preclude sexual activity on her part. Thus, it cannot be said that the defendant can claim a lack of sexual opportunity with the plaintiff wife was a cause of the marital breakup, and the court so finds .
The defendant recently had a bunionectomy operation that went awry that has given rise to his filing a malpractice suit against the doctor who operated upon him. He may need further surgical intervention.
Both parties complain of a lack of care, concern, sympathy, and attendance by the other during their illnesses. The court finds that neither party caused the other's ailments, or aggravated them and cannot attribute these medical problems as the cause of the marital breakup.
The ten or more career moves that the defendant made were all done with the help and cooperation of the plaintiff. In the course of these moves, they usually bought a house at each new location. At present, they own a house in Chadds Ford, Pennsylvania, that cost $447,000 and is in the defendant's name, and a waterfront house in Madison, Connecticut, that is in plaintiff's name. The defendant lives in his house and commutes to work in Philadelphia, Pennsylvania. The plaintiff lives in her home with their 15 year old daughter and does not work. The plaintiff's house cost $87,000 in 1976, as a summer house. It has since been winterized on the third floor only, where plaintiff lives. She rented out the first and second floors one summer for $6000 per month.
The house was purchased in 1976 by the couple with $36,000 from a legacy of the plaintiff from her father, and an alleged sum from the defendant that came from the net received from the sale of a house they had owned. In addition, the defendant says he put in money and labor to fix up, equip, and modernize the Madison house in the total sum of $70,000.
The defendant contends that the plaintiff can work at certain types of jobs and earn money. He also says the plaintiff does not swim, bike ride, walk, and lose weight as her doctors tell her to, to improve her condition and lessen her pain.
Plaintiff believes she has contributed to defendant's career. He does not deny this, but he also alleges she has CT Page 4282 tried to, and may have hurt his career by her calling and writing to his bosses and making various harmful allegations against him.
A trust of some $18,000 was set up for their daughter's college costs; $12,500 of this money has been used by the plaintiff for legal fees.
The divorce action was initially filed by the plaintiff in 1988 with no action taken after a reconciliation, and then it was reactivated by the plaintiff in 1989 after an elaborate reconciliation agreement. Both parties were still possibly sexually active with other people at this time, unknown to each other. The agreement was breached and this suit pushed ahead to trial.
The defendant has testified with proof of same produced, to show he earns about $153,000 per year now in salary and also receives other additional monies from his job, etc., that bring his total earnings to about $210,000 per year.
The Madison house has been appraised at about $686,400 or less now in April 1991. The mortgage on it is $43,000 with the monthly payments being $393.35. The Chadds Ford house that cost $447,000 has dropped in value to $376,000 in two years. The mortgages on it are approximately $361,000 and the monthly mortgage payments are $3,300, with taxes. It costs defendant $55,000 per year to operate this house.
The defendant is fifty years old, has high blood pressure, for which he takes medication, suffers from osteomyelitis, and is overweight,. He is employed now by Smith, Kline and Beechmam in their Philadelphia plant.
The defendant has no source of retirement benefits except savings, and he has not been with this employer long enough for his pension that he can receive from it, to vest.
He is expecting to receive an annual performance bonus in an amount between $6000 and $30,000. The amount is still unknown to the court, as is the time when he will receive it.
Here we have a mature couple with one older minor child (will be 18 on 10/2/93), married 28 years who are seeking to dissolve their marriage. Each of them has illnesses, that are not life threatening or were caused by the other and the court finds the illnesses are not a causal factor in the breakup of the marriage.
Each of them has committed adultery many times, with CT Page 4283 several different partners. However, they have come back to each other after their respective outside sexual activities, reconciled, had a child, forgiven in some instances and remained married to each other until this action. The court does not find their respective adulterous conduct to have been the cause of this marital breakup. The defendant testifies he does not love the plaintiff and desires a divorce. The plaintiff says she still loves her husband but believes the marriage has broken down irretrievably and wants a divorce.
Accordingly the court takes jurisdiction of this matter, and finds the marriage has broken down irretrievably, with no possibility of reconciliation. Whereupon it is adjudged that the marriage of the parties in this action be and is hereby dissolved, and they are each declared to be single and unmarried.
The court awards joint legal custody of the minor child Heather, to both parties, with actual physical custody granted to the plaintiff and orders that defendant have liberal visitation rights regularly, and on holidays, and vacation times.
The plaintiff is awarded all of the furniture and personal property in the Madison house, except for any identifiable personal property that she may have that belongs to the defendant, that is specifically but not limited to:
1. His $10,000 stamp collection (estimated value);
2. His $10,000 investment diamond;
 3. All documents, etc., business records, boat records, tax records and deeds.
The defendant is awarded all of the furniture and personal property in the Chadds Ford house except for any identifiable items that belong to the plaintiff.
The plaintiff is awarded any and all of her jewelry and fur coats.
The defendant is to keep the Chadds Ford house, and the plaintiff is to hold a 65% interest as a tenant in common with the defendant who is awarded the remaining 35% interest in the Madison house. The parties are ordered to share in; at a 65% — 35% ratio; the mortgage payments, taxes, interest, insurance and all costs of upkeep, repairs, maintenance and improvement. Neither party may mortgage or hypothecate the property without the consent of the other. CT Page 4284
Neither party may contract to repair, improve, refurnish, etc. this property at a cost in excess of $300.00 without the consent of the other.
Any net rental profits received as rent by the plaintiff for any portion of the Madison house may be retained by her.
Each party is ordered to pay their own debts.
The defendant is ordered to transfer to the plaintiff the Audi automobile she now drives, free of its existing loan, or pay himself the said loan according to its terms.
The plaintiff is responsible for all insurance, licensing, care and upkeep on the said automobile.
The defendant is to retain his own car.
The Madison house is to be sold and the net proceeds divided 65% to plaintiff and 35% to the defendant upon either of the first to occur; plaintiff's remarriage or cohabitation as per Connecticut General Statutes 46b-86b; plaintiff's death; plaintiff's ceasing to reside in the house for a continuous period of 4 months or more, or the transfer of the home to third parties. Either party may buy the other out.
Husband shall maintain $200,000 life insurance as provided by his employer, and as long as he is insurable, for Heather's benefit, until the earliest of her death, or reaching age 19.
Husband shall maintain $200,000 life insurance as provided by his employer and as long as he is insurable for wife's benefit so long as he is paying alimony.
The defendant shall provide medical-dental insurance for the minor child so long as he is permitted to do so by his insurance contract provided by his employer, but not beyond the child's 25th birthday.
Wife shall continue to be insured under husband's employer provided medical insurance for three years pursuant to statute. At the expiration of COBRA, husband shall pay to wife for her medical insurance premiums for an additional two years from the entry of a decree of dissolution (the last year being 1996), up to $3,000.00 annually upon proof of premium amounts, to be supplied by wife, but only so long as wife is unemployed, or medical insurance is not offered to her by her employer.
Wife shall pay all of her own unreimbursed medical and CT Page 4285 dental expenses.
Husband shall pay all of the child's unreimbursed medical and dental expenses, except that wife shall not incur nonemergency or elective treatment expenses in excess of $100.00 for the child without obtaining husband's approval which shall not be unreasonably withheld.
The provisions of 46b-84c of the Connecticut General Statutes shall apply to all medical insurance for the child.
Plaintiff is ordered to remit to defendant $12,500.00 that she took from Heather's trust for her education or welfare, that was established under the U.G.M.A. which plaintiff used for her own benefit. Husband-defendant upon receipt of same and the remaining $6,000.00 in the trust, is ordered to hold same as custodian, all the money for her (Heather's) college education expenses.
The defendant is ordered to pay plaintiff's counsel fees owed to Cohen Rubin to date only. Plaintiff to pay any and all other counsel fees she may owe.
The plaintiff is denied any awards from the defendant's pension whenever it vests, and/or becomes available to him.
The plaintiff is denied any claim, or award, of any damages the defendant may receive for and from his medical malpractice claim. It is the court's understanding that the injury occurred after their separation, and during the pendency of this suit.
The plaintiff is denied any claim or award from any bonus that the defendant may receive for 1990.
The defendant is ordered the continue to pay to plaintiff the pendente lite unallocated alimony and support sum as ordered by the court in 1990, until such time as this final judgment supersedes the pendente lite order.
Defendant is ordered to pay to the plaintiff $50,000.00 per year as unallocated alimony and support ($961.54 weekly), until the first to occur, of either party's death, remarriage of wife, cohabitation, etc. of wife as defined by 46b-86(e)(b) of the Connecticut General Statutes until October 2, 1993. If on October 2, 1993 none of the above other events has occurred, the amount payable by defendant to wife will be reduced to $39,000.00 annually ($750.00 weekly) as alimony until the first to occur, of either party's death, remarriage of wife, cohabitation of wife as defined by Connecticut General Statutes or the expiration of ten years from the entry of the decree of CT Page 4286 dissolution of marriage. Said alimony shall be deductible by husband-defendant and taxable to wife.
The court properly considered and weighed the applicability of all relevant statutory factors prior to deciding this case.
There is no denying that the plaintiff did contribute greatly to the furtherance of the defendant's career. The court takes cognizance of this fact, and has attempted to equitably distribute the gains of the defendant. The defendant is not a well man, is deeply in debt, and is subject to an horrendous multi-tax bite.
The court is also aware that the plaintiff at times was less than credible and/or evasive in her testimony and cast doubt on her case.
Judgment is ordered as stated.
RAMSEY, JUDGE